**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adrian Burrell,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>    Defendant. | No. CV-14-00050-PHX-JAT<br><br>**ORDER** |

  Plaintiff Adrian Burrell appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal. (Doc. 18).

**I. Background**

  **A. Procedural Background**

  On February 10, 2010, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of January 23, 2010. (R. 239). The Commissioner denied benefits on June 17, 2010, (R. 150), and Plaintiff requested reconsideration, (R. 154). Plaintiff was again denied on December 30, 2010, (R. 155), and she appealed.

  On July 9, 2012, Administrative Law Judge ("ALJ") Patricia A. Bucci held a hearing on Plaintiff's claim. (R. 50-79). At the hearing, Plaintiff amended her disability onset date to March 1, 2010. (R. 54). Following the ALJ's unfavorable decision, (R. 18-38), Plaintiff appealed to the Appeals Council. After the Appeals Council denied

Plaintiff's request for review, (R. 1), Plaintiff filed an appeal with this Court. (Docs. 1, 18). Plaintiff argues that the ALJ failed to properly develop the record, improperly discounted the opinions of Plaintiff's treating physicians, and improperly rejected Plaintiff's subjectively-reported symptoms. (Doc. 18 at 7, 11, 19).

### B.    Medical Background

The Court will briefly summarize the major points of Plaintiff's medical history, which is more thoroughly recounted in the administrative record. Plaintiff has been diagnosed with headaches, hypertension, degenerative disc disease of the lumbar spine, status post laminectomy of a cervical spine tumor, a history of seizure disorder, chronic opiate dependence, incontinence, depression, and obesity. (R. 380, 394, 400, 429, 483). In February 2009, Plaintiff suffered a seizure possibly related to a long-standing cervical spine tumor. (R. 379). In March 2009, Plaintiff underwent surgery to remove the spine tumor. (R. 369). Following surgery, Plaintiff did not experience any more seizures but had paresthesias in her left arm and leg, and some decreased function in her left hand with fine motor activity. (R. 363). Also in March 2009, Plaintiff underwent an MRI and was diagnosed with degenerative disc disease at the L3-L4 through L5-S1 levels with "left neural foraminal disc protrusion vs. small extrusion abutting the existing left L4 nerve root." (R. 385).

## II.   Disability

### A.    Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not,

- 3 -

before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

### C. The ALJ's Evaluation Under the Five-Step Process

The ALJ applied the five-step sequential evaluation process using Plaintiff's amended alleged onset date of March 1, 2010. (R. 24). The ALJ found in step one of the sequential evaluation process that Plaintiff has not engaged in substantial gainful activity since her amended alleged onset date. (R. 24). The ALJ then found Plaintiff to have the

following severe impairments: headaches, hypertension, status post laminectomy at C3-C4 of the cervical spine with resection of a benign tumor, history of seizure disorder, history of incontinence, and obesity. (R. 24). Under step three, the ALJ noted that none of these impairments met or medically equaled one of the listed impairments that would result in a finding of disability. (R. 27). The ALJ then determined that Plaintiff's residual functional capacity ("RFC") was the ability to "perform range [sic] of light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes or scaffolds. She must avoid concentrated exposure to unprotected heights and dangerous machinery with moving mechanical parts." (R. 27). Under step four, the ALJ determined that Plaintiff is capable of performing her past work as a receptionist, file clerk, and manicurist. (R. 32). The ALJ found Plaintiff was not disabled. (R. 33).

### D.   Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

### III. The ALJ's Development of the Record

Plaintiff argues that the ALJ erred in failing to adequately develop the record because the ALJ did not permit Plaintiff to obtain testimony from nonexamining physician Dr. Ostrowski. (Doc. 18 at 8-9). Plaintiff argues that the ALJ's refusal to present Dr. Ostrowski for testimony at the hearing prevented Plaintiff from discovering whether he has had his medical license suspended (which would disqualify him from being an acceptable medical source) or the nature and scope of his training in assessing work ability. (*Id.* at 10).

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459-60.

Plaintiff has not identified any ambiguity or inadequacy in the evidence sufficient to justify her request to call Dr. Ostrowski as a witness. Plaintiff asserts in her reply brief that because Dr. Ostrowski relied upon Dr. Prieve to formulate his opinion, and Dr. Prieve is not an acceptable medical source, it was relevant to the reliability of Dr. Ostrowki's opinion for Plaintiff to call Dr. Ostrowski as a witness. (Doc. 23 at 3-4). Calling a witness to testify at a hearing is always relevant to the weight to be given to that witness's opinion. But relevance is not the test for whether an ALJ should have further developed the record. Plaintiff does not explain how the record is inadequate or ambiguous; rather, Plaintiff's complaint seems to be that because Dr. Ostrowski's opinion is not entitled to significant weight, the ALJ erred in relying upon it to reject the opinions of Plaintiff's treating physicians. This argument is one that Plaintiff appropriately makes elsewhere in the briefing, and the Court is well-equipped on the present administrative record to address it. Accordingly, the ALJ did not err in failing to develop the record.

### IV. The Opinions of Treating Physicians

#### A. Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also Orn*, 495 F.3d at 631. On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631.

#### 1. Substantial Evidence

Substantial evidence that contradicts a treating physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial

- 7 -

evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

### 2. Discounting of a Treating Physician's Opinion

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(c).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830).

### 3. Opinions on Disability

Finally, "[a]lthough a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). This is because the determination as to whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Thus, even if a treating physician's opinion is controlling, it does not necessarily lead to a finding of disability. See *Magallanes v. Bowen*, 881 F.2d 747, 753

(9th Cir. 1989) (rejecting a treating physician's opinion of disability).

**B.     Discussion**

Plaintiff argues the ALJ erred in rejecting the opinions of her treating physicians, Dr. Riley and Dr. Saperstein. (Doc. 18 at 13-19).

**1.     Dr. Riley**

Dr. Riley was Plaintiff's treating physician who opined on March 31, 2012 that Plaintiff could not work full-time on a consistent basis. (R. 494). Dr. Riley opined that in an eight-hour workday, Plaintiff could sit for less than two hours, stand/walk for less than two hours, carry less than ten pounds, and lift less than ten pounds. (R. 494). Dr. Riley noted that Plaintiff takes narcotics for pain on an almost daily basis and listed the symptoms limiting Plaintiff's ability to work as pain based on frequent migraines, numbness, "ischemic attacks vs. stroke," and a spinal cord tumor. (R. 495). Dr. Riley opined that these symptoms severely limited Plaintiff's ability to work. (R. 495).

The ALJ discounted Dr. Riley's opinion and gave it neither controlling weight nor deference. (R. 31-32). The ALJ was therefore required to find Dr. Riley's opinion not only inconsistent with other evidence in the record, but also to provide specific and legitimate reasons supported by substantial evidence in the record. The ALJ concluded that Dr. Riley's opinion was inconsistent with Dr. Riley's own treatment notes (including referrals to other specialists) as well as the other objective evidence of record. (R. 31-32).

The ALJ cited the treatment records of Plaintiff's urologist, who found no significant problems other than nocturnal enuresis and mild stress urinary incontinence. (R. 399, 401). On a physical examination, Plaintiff had normal exam of her spine and heart. (R. 400-01). The ALJ also cited the records of Plaintiff's cardiologist, who also saw Plaintiff on referral from Dr. Riley. (R. 32). These records show that after Plaintiff suffered a transient ischemic attack, she had unremarkable cardiac testing, preserved ejection fraction, and no evidence of significant physical abnormalities. (R. 407, 410). Neurological findings of Plaintiff's cranial nerves were normal. (R. 407). Plaintiff was advised to undergo further testing if her shortness of breath persisted or worsened, (R.

1  408), but there is no evidence in the record that she did so. Dr. Saperstein, Plaintiff's
2  neurologist, noted in 2011 that Plaintiff's symptoms were improving, with only one
3  episode of bedwetting from September 2010 through January 2011. (R. 492). Although
4  Plaintiff still had some weakness on the left side of her body, Dr. Saperstein noted that
5  Plaintiff's psychologist had inquired about the possibility of Plaintiff driving again
6  because it had been more than three months since she had a seizure (apparently the
7  minimum time period under Arizona law). (R. 491). Dr. Saperstein reduced Plaintiff's
8  medication level. (R. 491). Dr. Saperstein previously identified Plaintiff's left-side
9  weakness as "stable." (R. 444). The ALJ also cited Dr. Riley's notes indicating normal
10 neurological findings. (R. 424, 484). Dr. Riley recommended massage therapy to manage
11 Plaintiff's left-side spasms. (R. 484).

The ALJ provided specific and legitimate reasons for rejecting Dr. Riley's opinion. The ALJ specifically pointed out evidence in the treatment notes of Dr. Riley, as well as in the notes of specialists to which Dr. Riley had referred Plaintiff, that does not support Dr. Riley's restrictive functional capacity assessment. *See* (R. 495).

### 2. Dr. Saperstein

Dr. Saperstein, Plaintiff's treating neurologist, opined in March 2012 that Plaintiff is "completely disabled," remarking that Plaintiff "experiences seizures," is "unsteady," and has numbness and weakness on her left side. (R. 490). Dr. Saperstein completed three functional capacity assessments of Plaintiff, one in September 2010 and two in March 2010. In the first assessment, Dr. Saperstein did not complete the form and did not indicate whether Plaintiff was capable of full-time work. (R. 318). Nevertheless, Dr. Saperstein opined that in an eight-hour workday, Plaintiff was capable of sitting less than two hours, standing/walking less than two hours, lifting less than ten pounds, and carrying less than ten pounds. (R. 318). He opined that Plaintiff suffered medication-related side effects that were moderately severe and symptoms of pain, dizziness, weakness, and "incoordination" that further limited Plaintiff's ability to work. (R. 319).

In the first of Dr. Saperstein's two additional capacity assessments, Dr. Saperstein

1  opined that Plaintiff suffered from seizures, weakness, imbalance, and pain but did not
2  complete the portion of the form that asked for the frequency of headaches or seizures.
3  (R. 496). Dr. Saperstein reported Plaintiff experiencing weakness, pain, and imbalance
4  "every day" lasting three hours of more, and assessed a severe restriction on Plaintiff's
5  capabilities. (R. 496). In the second assessment, which was completed on the same date,
6  Dr. Saperstein opined that Plaintiff could not perform full-time work based on
7  "weakness, imbalance, pain." (R. 497). Dr. Saperstein listed Plaintiff's medication-
8  related impairments as "moderately severe" but did not complete the portion of the form
9  asking for the identity of the medication. (R. 497). Dr. Saperstein did not complete the
10 portion of the form asking if any symptoms other than those listed above further impaired
11 Plaintiff's ability to work, but he nonetheless completed the second subpart to that
12 question, which asked to rate the extent the additional symptoms further limited work
13 ability. (R. 498). He answered that with "severe." (R. 498).

14 The ALJ discounted Dr. Saperstein's opinion because it was inconsistent with both
15 his own treatment notes as well as the treatment notes of other treating physicians. (R.
16 31). The ALJ specifically cited treatment notes "showing normal gait, intact sensation,
17 normal muscle mass and tone, good blood pressure levels with preserved ejection
18 fraction, no seizure activity since February 2009, a positive response to analgesic
19 medication, and 'mild' urinary incontinence." (R. 31). The Court has already addressed
20 some of these treatment notes in its discussion of Dr. Riley, *supra*, and will not repeat
21 those even though they are equally applicable to Dr. Saperstein. The most significant of
22 the treatment notes cited by the ALJ is the fact that the record shows Plaintiff had a single
23 seizure in February 2009 and no seizures since that date. (R. 442). This contradicts Dr.
24 Saperstein's assessment that Plaintiff suffered from seizures, (R. 496), and his opinion to
25 the Commissioner that Plaintiff "experiences seizures," (R. 490). This impairs Dr.
26 Saperstein's credibility to the extent that his credibility was not already impaired by his
27 incomplete and contradictory answers on his functional assessments.

28 The ALJ also correctly pointed out that Dr. Saperstein's treatment notes contradict

his functional assessment. Dr. Saperstein noted "non-organic" features to his examinations of Plaintiff, indicating a psychological component affecting the results of the examination. (R. 442, 446). On one occasion, Dr. Saperstein noted that the "jerkiness and giveaway on testing is not an organic feature." (R. 446). He noted a "very bizarre gait" that was "narrow based and has a sort of 'prancing' character," yet Plaintiff was unsteady standing with her feet together and her eyes open, gyrating and having astasia-abasia. (R. 446). Dr. Saperstein characterized Plaintiff's motor control issues as odd and contradictory. (R. 446). Dr. Saperstein also noted with respect to Plaintiff's single seizure that it was "suspicious for a nonorganic process" for Plaintiff to have been in a highly-functional state for two weeks but not remember anything afterward. (R. 446). Dr. Saperstein noted that Plaintiff did not appear to have any peripheral nervous system lesion. (R. 446). On a later occasion, Dr. Saperstein concluded that most of Plaintiff's problems were related to depression and side effects from medications. (R. 442). Dr. Saperstein also evaluated Plaintiff's gait as "unremarkable" on another occasion. (R. 444).

Thus, because the ALJ gave specific and legitimate citations to the portions of the record contradicting Dr. Saperstein's functional capacity assessment, the ALJ did not err in rejecting Dr. Saperstein's opinion.

### 3. Dr. Oskowski

After the ALJ determined that the opinions of Dr. Riley and Dr. Saperstein were not given significant weight, the ALJ ascribed significant weight to the opinion of Dr. Oskowski, a nonexamining physician. (R. 32). Plaintiff argues that Dr. Oskowski's opinion is not entitled to significant weight. (Doc. 18 at 13). Her first argument is that Dr. Oskowski relied upon the medical opinion of Dr. Prieve, a source that the ALJ properly found to be not an acceptable medical source and thus entitled to no weight. (*Id.*); (R. 32).

Although Dr. Prieve was not an acceptable medical source, this fact does not undermine the reliability of the balance of Dr. Oskowski's opinion. Dr. Oskowski reviewed Plaintiff's entire medical file, including the records of her treating physicians.

(R. 139-42). Dr. Oskowski concluded from the record that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, standing and walking for six hours in an eight-hour workday. (R. 145). The ALJ found Dr. Oskowski's opinion to be consistent with Plaintiff's "remote history of one seizure episode and treatment notes showing intact sensation, normal muscle mass and tone, good blood pressure levels, a positive response to analgesic medication, 'mild' urinary incontinence, and astasia-abasia gait behaviors." (R. 32).

Plaintiff argues that Dr. Oskowski's opinion is not credible as a matter of law because it found "no substantial change in circumstance" since the Plaintiff's previous RFC. (Doc. 18 at 13); (R. 146). Plaintiff filed a prior application for disability benefits, and in the present case the ALJ noted in her decision that Plaintiff had shown "changed circumstances" since the first application. (R. 21). But it does not follow that Dr. Oskowski's opinion conflicted with the ALJ. Dr. Oskowski made his comment in the RFC section of his findings; therefore, a rational interpretation of his comment is that he found no changed circumstances with respect to Plaintiff's *functional capacity*, not that he found no changed circumstances in the record evidence as a whole. This is an entirely proper interpretation, and "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld." *Thomas*, 278 F.3d at 954.

Accordingly, the ALJ did not err in finding Dr. Oskowski's opinion to be entitled to significant weight.

## V.     Plaintiff's Reported Symptoms

### A.     Legal Standard

> An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–36. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the

>symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))
>
>Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz. Feb. 10, 2014).

### B.    Discussion

Plaintiff contends that the ALJ failed to point to specific findings showing clear and convincing reasons to discredit Plaintiff's subjective complaints. (Doc. 18 at 23-24). The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she reported, but found Plaintiff's testimony regarding the extent of her symptoms to be not credible. (R. 30).

Plaintiff noted in her description of her daily activities that she bathes in the evenings, sometimes needs assistance getting dressed if she is going out, watches TV, sometimes picks up her room and makes her bed, sometimes does her own laundry,

1  prepares her own meals, helps with general cleaning, makes phone calls, and leaves the
2  house two to three times per week. (R. 450). She does not drive or shop at stores, but
3  takes care of three dogs and a cat and does light yard work. (R. 450). The ALJ noted that
4  these activities conflict with her testimony at the hearing, where Plaintiff testified that she
5  showered only every five to seven days and lived in her pajamas. (R. 64). The ALJ also
6  noted that this testimony was inconsistent with Dr. Rabara's observations that Plaintiff
7  was well-groomed, had neatly applied makeup, and had clean hands with manicured and
8  painted fingernails. (R. 25, 450).

9  With respect to Plaintiff's complaints of headache pain, the ALJ noted that
10 Plaintiff's treatment history is limited. The records show Plaintiff was advised to get
11 massage therapy for a muscle tension headache, (R. 484), and reported relief with
12 analgesic medication, (R. 483). With respect to Plaintiff's allegations of left-sided
13 weakness and numbness, the ALJ pointed out that these allegations are not supported by
14 objective medical evidence, with Dr. Saperstein concluding that Plaintiff's gait
15 disturbance was of psychological origin. (R. 442, 446). The ALJ also cited treatment
16 records showing an unremarkable gait, normal muscle mass, and stable left-sided
17 paresthesias. (R. 29, 400, 416-17, 444). Additionally, the ALJ noted that Plaintiff's recent
18 treatment records show intact sensation and normal neurological findings. (R. 29, 500).

19 The ALJ also discounted Plaintiff's complaints of disabling back pain, concluding
20 that these complaints were contradicted by her conservative treatments of medication, (R.
21 500), and by the normal muscle mass and tone of her spine, (R. 400). Furthermore, the
22 ALJ found Plaintiff's complaints of incontinence to not be as severe as alleged because
23 she needed protective undergarments only during the night. (R. 30, 58). Finally, although
24 Plaintiff alleged having memory issues and side effects from medication, (R. 344), an
25 examining clinical psychologist found Plaintiff to be "bright and articulate with high
26 average intellect and memory" and with "no evidence for any cognitive deficits." (R.
27 453). The ALJ concluded that Plaintiff was not credible as to her limitations. (R. 31).

28 With respect to each of the areas for which the ALJ found Plaintiff's self-reported

symptoms to be not credible, the ALJ made specific findings with citations to the record that provided clear and convincing reasons explaining the ALJ's credibility determination. The ALJ did not err in finding Plaintiff to be not credible in the severity of her symptoms based on Plaintiff's own description of her daily activities and limitations.[1]

## VI. Conclusion

The ALJ did not err in finding Plaintiff to be not disabled.

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 22nd day of September, 2015.

*James A. Teilborg*
Senior United States District Judge

---

[1] In reviewing the record and the ALJ's decision, the Court observed that the ALJ misstated the record when she remarked that there was no evidence that Plaintiff's headaches have worsened since last working. (R. 28). Plaintiff testified at the hearing that her headaches have worsened, although it is unclear from the transcript as to whether this is since the headaches first began in puberty or since Plaintiff was working. (R. 57). Even if the ALJ erred on this point, this error "does not negate the validity of the ALJ's ultimate [credibility] conclusion" and therefore is harmless error not warranting reversal. *Carmickle*, 533 F.3d at 1162.